IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:13-CV-791-FL

| | |
|---|---|
| FRONTIER COMMUNICATIONS OF THE CAROLINAS LLC, ) ) ) Plaintiff, ) ) v. ) ) DUKE ENERGY CAROLINAS, LLC, ) ) Defendant. ) | ORDER |

This matter comes before the court upon defendant's motion to dismiss and compel arbitration, or, in the alternative, to stay and compel arbitration (DE 9), together with plaintiff's motion to stay ruling on defendant's motion (DE 18). The issues raised are ripe for ruling. For the reasons that follow, the court will grant defendant's motion and deny plaintiff's motion.

**BACKGROUND**

The court draws from the record the following uncontested facts and briefly summarizes here the respective arguments of the parties. Plaintiff is an incumbent local exchange carrier, which is a local exchange carrier that meets the requirements of 47 U.S.C. § 251(h). A local exchange carrier is "any person that is engaged in the provision of telephone exchange service or exchange access." 47 U.S.C. § 153(32). Defendant is a utility company that distributes electricity to retail customers in North Carolina and South Carolina.

Three agreements between the parties ("Joint Use Agreements"), executed between 1983 and 1985, authorize each party to attach its cables, which are used in the transmission of the party's retail

services, to poles owned by the other party.[1] Plaintiff's decision to terminate the Joint Use Agreements effective as of August 8, 2012, was recognized by defendant related to new or additional pole attachments. The underlying dispute between the sides appears related to a reduction of rates demanded by plaintiff at or around the same time for existing attachments.

The Joint Use Agreements, referenced in the complaint and submitted as exhibits to defendant's motion, each contain a mandatory arbitration provision which provides as follows:

> Should disputes arise between the parties concerning matters pertaining to this agreement, and such differences cannot be amicably settled by the parties hereto, the matters in dispute shall be submitted to arbitration as follows:
>
> 1. Either party desiring arbitration shall give written notice thereof to the other party setting forth the matter to be arbitrated. Within ten (10) days after receipt of such notice each party shall name their own arbitrator to serve on an Arbitration Panel.
>
> 2. The two arbitrators thus named shall within ten (10) days after their appointment, jointly request the Regional Director of the American Arbitration Association, Charlotte, N.C. to submit a list of five qualified arbitrators, residents of North Carolina, South Carolina, Virginia, or Georgia. The impartial arbitrator shall be selected by alternate striking of the names therein with the party requesting arbitration striking first.
>
> 3. The Arbitration Panel as herein provided for in this article, shall promptly act on any question or questions in controversy, and shall within 30 days after the close of the evidence render its majority decision in writing. Such decision shall be final and binding on both parties.
>
> 4. Each party shall bear all expenses of its own representatives and the compensation and expenses of the impartial arbitrator shall be borne equally

---

[1] These include the Joint Use Agreement between Duke Power Company and Continental Telephone Company of North Carolina, dated November 1, 1983, a copy of which is attached to the arbitration demand as "Exhibit A"; the Joint Use Agreement between Duke Power Company and Continental Telephone Company of South Carolina, dated November 1, 1983, a copy of which is attached thereto as "Exhibit B"; and the Joint Use Agreement between Duke Power Company and General Telephone Company of the Southeast, dated November 1, 1985, a copy of which is attached to the arbitration demand as "Exhibit C".

by the parties hereto.

(Compl. DE 1, ¶ 12; Exh. 1, Mem. in Support of Mot. to Dismiss, DE 10-1).

Defendant sought to put the disputed issues of or relating to claims under the Joint Use Agreements for breach of contract and unjust enrichment, before an arbitration panel. In its October 15, 2013, arbitration demand ("Arbitration Demand"), defendant asserts unpaid pole rent for 2012 and unpaid inventory settlement amounts totaling $1,042,126.66. The following month, on November 12, 2013, plaintiff filed the instant declaratory judgment action against defendant.

Plaintiff seeks a declaratory judgment that the Federal Communications Commission ("FCC") has primary jurisdiction over issues raised in the Arbitration Demand, regarding rates, terms, and conditions that defendant may charge plaintiff for attachments to defendant's utility poles.[2] Because the FCC has primary jurisdiction over the dispute raised in the Arbitration Demand, plaintiff urges, the dispute is outside the scope of the arbitration provision. Plaintiff also seeks a declaration that the Arbitration Demand is null, void, and of no effect.

In response, on December 5, 2013, defendant filed the instant motion to dismiss and compel arbitration, or, in the alternative, to stay and compel arbitration pursuant to Federal Rule of Civil Procedure 12(b)(1) and the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et seq.[3] Plaintiff responded in opposition to the motion to compel arbitration on January 21, 2014, on which date it

---

[2] The primary jurisdiction doctrine applies "whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." United States v. W. Pac. R.R., 352 U.S. 59, 64 (1956).

[3] Defendant also moves to dismiss the complaint pursuant to Rule 12(b)(6). Defendant argues plaintiff relies in its complaint on a federal statute that does not provide a private right of action for the enforcement of alleged rights under the statute. The court will not address this argument further where defendant's arguments related to the FAA are determinative of the instant motions, as discussed herein.

3

also filed the motion to stay. Four days prior thereto, on January 17, 2014, plaintiff filed a pole attachment complaint before the FCC concerning related issues with defendant in this case. Plaintiff seeks a stay of this action until the FCC decides that matter.

Defendant depicts the motion to stay as a blatant attempt to construct a further delay of ruling in this action initiated by plaintiff, which characterization plaintiff vigorously disputes. Plaintiff contends even if the court has the authority to compel immediate arbitration, the more prudent decision would be to stay arbitration to allow address of disputed issues by the FCC. Threaded among its various filings, defendant argues that plaintiff has not produced any evidence that the arbitration provision is invalid or that the dispute raised in the Arbitration Demand is outside the scope of the arbitration provision. Thus, defendant urges, the court must compel arbitration.

**DISCUSSION**

A.      Applicability of the FAA

The FAA governs the rights and responsibilities of the parties with respect to an arbitration agreement.[4] Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc., 380 F.3d 200, 204 (4th Cir. 2004). The FAA provides, in pertinent part, that:

> [a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. As a result of this federal policy favoring arbitration, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the

---
[4] The parties do not dispute the applicability of the FAA.

4

construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). Thus, a court "has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." Adkins v. Labor Ready, Inc., 303 F.3d 496, 500 (4th Cir. 2002).

To further facilitate arbitration, Section 3 of the FAA authorizes a party to an arbitration agreement to demand a stay of court proceedings in order to pursue arbitration, provided, however, that "the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. "Although this principle of 'default' is akin to waiver, the circumstances giving rise to a statutory default are limited and, in light of the federal policy favoring arbitration, are not to be lightly inferred." Maxum Founds., Inc. v. Salus Corp., 779 F.2d 974, 981 (4th Cir. 1985); see also Forrester v. Penn Lyon Homes, Inc., 553 F.3d 340, 342 (4th Cir. 2009). Default is not at issue in this case.

The FAA reflects "a liberal policy favoring arbitration agreements." AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1745 (2011). In the Fourth Circuit, a litigant can compel arbitration under the FAA if he can demonstrate (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the other party to arbitrate the dispute. Adkins, 303 F.3d at 500-01. "[T]he burden is on the party opposing arbitration . . . to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." Santoro v. Accenture Fed. Servs., LLC, 748 F.3d 217, 221 (4th Cir. 2014) (quotation omitted).

5

B.  Analysis

The court takes up both motions below, as plaintiff's motion to stay is nested firmly within its defense of defendant's motion.  In this case, there is no question that a dispute exists between the parties, and that plaintiff has refused to arbitrate the dispute.  In addition, the transaction evidenced in the Joint Use Agreements is related to interstate commerce.  See Rota-McLarty v. Santander Consumer USA, Inc., 700 F.3d 690, 697 (4th Cir. 2012) ("[T]he FAA does not impose a burden upon the party invoking the FAA to put forth specific evidence proving the interstate nature of the transaction."); see also Maxum, 779 F.2d at 978 n.4 ("Where . . . the party seeking arbitration alleges that the transaction is within the scope of the [FAA], and the party opposing application of the [FAA] does not come forward with evidence to rebut jurisdiction under the federal statute, we do not read into the [FAA] a requirement of further proof by the party invoking the federal law.").

The heart of this dispute lies then with plaintiff's contest that the arbitration provision at issue here  covers the instant dispute, or the second element outlined in the Adkins decision above. Plaintiff characterizes the dispute as regarding whether the rates for pole attachments in the Joint Use Agreements comply with federal law.  Because, it asserts, the FCC has primary jurisdiction over the dispute raised in the Arbitration Demand (as buttressed by its filing January 17, 2014, of the pole attachment complaint against defendant before the FCC), the arbitration provision does not apply.

Plaintiff details recent developments in the FCC's interpretation of its regulatory authority, specifically the application of a statute related to rates for utility pole attachments.  Pursuant to what is commonly referred to as the Pole Attachments Act ("PAA"), 47 U.S.C. § 224, the FCC is required to "regulate the rates, terms, and conditions for pole attachments to provide that such rates, terms, and conditions are just and reasonable," except under certain circumstances not applicable here.  On

April 7, 2011, the FCC issued an order that extended application of the PAA to incumbent local exchange carriers ("ILECs") like plaintiff, thus entitling them to just and reasonable rates for pole attachments. See Implementation of Section 224 of the Act; A National Broadband Plan for Our Future, 26 FCC Rcd. 5240, 5328-33, 2011 WL 1341351 (2011) ("Pole Attachment Order").

The changes provided for under the Pole Attachment Order became effective on July 12, 2011. See Implementation of Section 224 of the Act; A National Broadband Plan for Our Future, 76 Fed. Reg. 40817 (2011). The District of Columbia Circuit upheld the Pole Attachment Order on February 26, 2013. See Am. Elec. Power Serv. Corp. v. Fed. Commc'ns Comm'n, 708 F.3d 183 (D.C. Cir.), cert. denied, 134 S. Ct. 118 (2013).

In the Pole Attachment Order, the FCC "declined . . . to adopt comprehensive rules governing" the pole attachments of ILECs, opting instead "to proceed on a case-by-case basis" in complaint proceedings brought before the FCC. Pole Attachment Order, 26 FCC Rcd. at 5334. The FCC recognized the existence of agreements between ILECs and utility companies, such as defendant, for joint use of utility poles. Id. In addition, the FCC acknowledged the concern some ILECs expressed about these existing joint use agreements. Id. at 5334-35. However, the FCC stated that it "is unlikely to find the rates, terms, and conditions in existing joint use agreements unjust or unreasonable." Id. at 5335. Plaintiff argues here that the rates in the Joint Use Agreements violate the PAA, and that the FCC has the primary jurisdiction to determine what rate is appropriate.

"Primary jurisdiction applies to claims 'properly cognizable in court that contain some issue within the special competence of an administrative agency. It requires the court to enable a 'referral' to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling.'" In re Bulldog Trucking, Inc., 66 F.3d 1390, 1399 (4th Cir. 1995) (quoting

7

Reiter v. Cooper, 507 U.S. 258, 268 (1993)). "Despite what the term primary jurisdiction may imply, it does not speak to the jurisdictional power of the federal courts. It simply structures the proceedings as a matter of judicial discretion, so as to engender an orderly and sensible coordination of the work of agencies and courts." Envtl. Tech. Council v. Sierra Club, 98 F.3d 774, 789 n.24 (4th Cir. 1996) (quotation omitted). "No fixed formula exists for applying the doctrine of primary jurisdiction." Id. at 789 (quotation omitted). "Generally speaking, the doctrine is designed to coordinate administrative and judicial decision-making by taking advantage of agency expertise and referring issues of fact not within the conventional experience of judges or cases which require the exercise of administrative discretion." Id.

Plaintiff's assertion of primary jurisdiction is misplaced here. While the decision whether to refer an issue under the doctrine of primary jurisdiction is "a matter of judicial discretion," Envtl. Tech., 98 F.3d at 789 n.24, "[b]y its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985).

"Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Peabody Holding Co. v. United Mine Workers of Am., 665 F.3d 96, 103 (4th Cir. 2012) (quotation omitted).

> When interpreting a contract containing an arbitration clause, "there is a presumption of arbitrability in the sense that 'an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'"

Id. at 104 (quoting Concepcion, 475 U.S. at 650). "An issue will be classified as being outside the

8

scope of an arbitration provision only when the parties have manifested such an intent in their written agreement." Great Am. Ins. Co. v. Hinkle Contracting Corp., 497 F. App'x 348, 352 (4th Cir. 2012) (citing Peabody, 665 F.3d at 104).

The arbitration provision in the Joint Use Agreements provides, in relevant part, that "[s]hould disputes arise between the parties concerning matters pertaining to this agreement, and such differences cannot be amicably settled by the parties hereto, the matters in dispute shall be submitted to arbitration . . . ." Both the Fourth Circuit and the Supreme Court have characterized similar arbitration provisions as "broad arbitration clauses capable of an expansive reach." Am. Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 93 (4th Cir. 1996) (citing Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 398 (1967) (labeling as "broad" an arbitration clause that covered "[a]ny controversy or claim arising out of or relating to this Agreement"); J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 321 (4th Cir. 1988) (construing as "broad" an arbitration clause that covered "[a]ll disputes arising in connection with" a contract)). A broad arbitration provision, as exists here, "render[s] arbitrable all disputes having a significant relationship to the [underlying] agreement regardless of whether those claims implicated the terms of the . . . agreement." Id.

Here, the Arbitration Demand implicates the terms of the Joint Use Agreements because it seeks to enforce the terms of the Joint Use Agreements relating to the rates the parties can charge each other for utility pole attachments. Thus, the broad arbitration provision in the Joint Use Agreements renders arbitrable the instant dispute. The arbitration provision in the Joint Use Agreements does not manifest an intent by the parties to exclude from arbitration issues relating to primary jurisdiction. Although plaintiff argues it is "doubtful" whether the parties agreed to arbitrate

9

these issues, "doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses, 460 U.S. at 24-25.

Plaintiff does not argue the primary jurisdiction issue is outside the purview of arbitrators, only that it was not required to present the primary jurisdiction argument to arbitrators or the FCC in the first instance because it has the right to ask the court to enjoin arbitration. "Of course, . . . the party opposing arbitration . . . can ask the court to enjoin arbitration on the ground that the underlying dispute is not arbitrable." Logan & Kanawha Coal Co. v. Detherage Coal Sales, LLC, 514 F. App'x 365, 370 (4th Cir. 2013) (internal quotation marks omitted). However, "an injunction against arbitration is appropriate only where an asserted claim clearly falls outside of the substantive scope of the agreement." Smith Barney Inc. v. Vogele, 967 F. Supp. 165, 169 (E.D. Va. 1997) (internal quotation marks omitted); see Stedor Enters., Ltd. v. Armtex, Inc., 947 F.2d 727, 728-29, 32-33 (4th Cir. 1991) (affirming district court's order compelling arbitration and dismissing request to enjoin arbitration where a valid arbitration agreement existed); Va. Carolina Tools, Inc. v. Int'l Tool Supply, Inc., 984 F.2d 113, 116-19 (4th Cir. 1993) (affirming district court's order enjoining arbitration where the issue in dispute was not arbitrable). An injunction against arbitration is not appropriate here where the arbitration provision is broad enough to cover the dispute.

In sum, a valid arbitration provision exists in the Joint Use Agreements. In addition, the dispute raised in the Arbitration Demand is within the scope of the arbitration provision. The court's role in determining whether a dispute is one to be resolved through arbitration is limited "to ensur[ing] that the dispute is arbitrable – i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." Murray v. United Food & Commercial Workers Int'l Union, 289 F.3d 297, 302 (4th Cir. 2002) (citations

10

omitted). Accordingly, after determining the parties' instant dispute is arbitrable, the court must compel arbitration. Adkins, 303 F.3d at 500.

The issues raised by plaintiff concerning potential deficiencies in the Joint Use Agreements can be raised before the arbitrators. See Jeske v. Brooks, 875 F.2d 71, 75 (4th Cir. 1989) ("Because the alleged defects pertain to the entire contract, rather than specifically to the arbitration clause, they are properly left to the arbitrator for resolution."); Muriithi v. Shuttle Express, Inc., 712 F.3d 173, 183-84 (4th Cir. 2013) ("A party challenging the enforceability of an arbitration clause under Section 2 of the FAA must rely on grounds that relate specifically to the arbitration clause and not just to the contract as a whole. Thus, a challenge specific to an arbitration clause is considered by the court in a motion to compel, while a challenge relating to the entire contract is heard only after the merits of a case have been referred to an arbitrator . . . .") (internal quotation marks omitted).

Plaintiff nonetheless argues the court should exercise discretion to stay a motion to compel arbitration pending primary jurisdiction referral, even if the court has the authority to compel immediate arbitration. Plaintiff cites in support of this argument N. Cal. Dist. Council of Hod Carriers v. Opinski, 673 F.2d 1074, 1076 (9th Cir. 1982) and Hawaii Nurses' Ass'n v. Kapiolani Health Care Sys., 890 F. Supp. 925, 930-31 (D. Haw. 1995).

In Opinski, a union commenced litigation "to compel arbitration over a clause in a collective bargaining agreement between the union and Opinski (employer)." 673 F.2d at 1075. However, "[t]he union filed the action after the employer had already filed an unfair labor practice charge before the [administrative agency] to have the clause declared illegal on its face." Id. The Opinski court determined that

> where a union has filed suit in a district court on a collective bargaining agreement

claim which is closely related to an unfair labor practice charge the employer has
already presented to the [administrative agency], the district court must exercise its
discretion to determine whether proceedings should be stayed until final disposition
of the [agency] proceeding.

Id.

Hawaii Nurses' concerned a dispute regarding the scope of two collective bargaining agreements between the parties. 890 F. Supp. at 927. The employer filed a petition with an administrative agency before the union subsequently filed an action in the district court to compel arbitration. Id. at 928. The court noted that the issue the union wished to arbitrate was virtually identical to the issue before the agency. Id. at 930. The court agreed with the union that it had the authority to compel arbitration. Id. at 931. However, the court stayed the litigation pending the agency's determination, noting the following:

[I]t would seem imprudent to compel an arbitration proceeding where the very same
matter has already been heard, and is under consideration, by the [agency]. The more
measured and judicious path would appear to be to stay the proceedings until the
[agency] has made its ruling. At that point, if arbitration is still warranted, either the
parties will agree to arbitrate the remaining issues or the Union may then proceed
with its motion to compel arbitration.

Id.

Opinski and Hawaii Nurses' reference the court's exercise of discretion to decide whether to stay arbitration once the court has already determined certain issues are within an administrative agency's primary jurisdiction. These cases, however, are in conflict with the court's obligation to refer a matter to arbitration if it falls within the scope of a valid arbitration agreement. See Dean, 470 U.S. at 218; Adkins, 303 F.3d at 500. Other courts more recently have recognized that the court lacks discretion to stay ruling on a motion to compel arbitration, even where primary jurisdiction has been raised. See Global Crossing Telecomms., Inc. v. 3L Commc'ns Mo., LLC, No. 4:13CV00885

12

ERW, 2013 WL 3893321, at *4 (E.D. Mo. July 26, 2013) ("Having determined that the tariff's arbitration provision constitutes a valid agreement between 3LCom and Plaintiffs, and that the parties' dispute is not outside the scope of the tariff's arbitration clause, the Court must deny Plaintiffs' request to stay this action and the related arbitration proceeding, as well as their request to refer the matter to the FCC."); N.Y. Cross Harbor R.R. Terminal v. Consol. Rail Corp., 72 F. Supp. 2d 70, 82 (E.D.N.Y. 1998) ("[H]aving decided that the . . . claims must be decided by an arbitrator, this court lacks the authority to make the discretionary decision whether those claims require preliminary referral to the [administrative agency]. This is not to say that the defendant is foreclosed from framing its primary jurisdiction arguments to the arbitrator. To the contrary, the doctrine of primary jurisdiction applies to arbitrators as well as courts."). Moreover, as discussed previously, arbitration may be enjoined only where the dispute is not arbitrable. See Smith, 967 F. Supp. at 169.

Plaintiff also seeks a declaration that defendant's Arbitration Demand is "null, void, and of no effect." Plaintiff suggests, however, that the Arbitration Demand is void solely because the FCC has primary jurisdiction. Plaintiff does not suggest the arbitration provision, pursuant to which the Arbitration Demand is issued, is invalid or unenforceable based on "any grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Moreover, "general contract defenses that are applicable to the entire contract . . . are reserved for the [arbitral] forum in which the dispute ultimately will be resolved." Muriithi, 712 F.3d at 184. Where the court has determined that plaintiff's primary jurisdiction argument does not foreclose arbitration in this case, this request is without merit.

13

In sum, a valid arbitration agreement exists between the parties. In addition, all issues involved in this litigation are arbitrable. "Dismissal [of the complaint] is a proper remedy when all of the issues presented in a lawsuit are arbitrable." Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709-10 (4th Cir. 2001). Accordingly, the court grants defendant's motion and compels arbitration of the dispute raised in the Arbitration Demand. The complaint is dismissed.

## CONCLUSION

For the foregoing reasons, the court GRANTS defendant's motion to dismiss and compel arbitration (DE 9), and DENIES plaintiff's motion to stay ruling on defendant's motion (DE 18). The clerk is DIRECTED to close this case.

SO ORDERED, this the 15th day of August, 2014.

_____
LOUISE W. FLANAGAN
United States District Court Judge